GERARD BENNETT and HERMAN D. LEVINO, Respondents, *v.* EDISON
ELECTRIC ILLUMINATING COMPANY of Brooklyn, Appellant.

*Contract to dig wells, the payment for the work to be dependent on the amount of
water furnished — the proper construction of a provision for a test determined by
the action of the parties — rule of construction of evidence where a party is in pos-
session of the subject-matter of a negative averment.*

A contract, drawn by a layman, was as follows: "We agree to put in for you
two wells to furnish station No. 3 at No. 81 Guinett Street, Brooklyn, E. D.,
at the uniform price of $10.00 per 1,000 gallons of water furnished per day of 24
hours. * * * It is understood that after test and upon completion of the
wells the price agreed upon is due and payable." Under this contract a test of
less than twenty-four hours continuance took place, of which the corporation
for which the work was to be done was notified, and at which its representa-
tive was present, and neither at that time nor for a long time thereafter did the
corporation express any dissatisfaction with the manner in which the test was
made.
*Held,* that, under the circumstances, it was not necessary that the test should
have continued for twenty-four hours.
Where a corporation in possession of wells presents, upon the trial of an issue as
to their capacity, very meagre evidence as to their production, the principle
may be invoked against it that where the subject-matter of a negative aver-
ment lies peculiarly within the knowledge of the other party, the averment is
to be taken as true unless disproved by that party.

APPEAL by the defendant, the Edison Electric Illuminating
Company of Brooklyn, from a judgment of the Supreme Court in
favor of the plaintiffs, entered in the office of the clerk of the county
of Kings on the 15th day of June, 1897, upon the verdict of a jury,
and also from an order entered in said clerk's office on the 22d day
of July, 1897, denying the defendant's motion for a new trial made
upon the minutes.

*Edward M. Shepard* [*Frank Harvey Field* with him on the
brief], for the appellant.

*Edward M. Grout,* for the respondents.

GOODRICH, P. J.:

The plaintiffs, engineers and contractors doing business under the
name of the Metropolitan Construction Company, in April, 1894,
entered into a writtten contract with the defendant corporation for

the building of two wells. The material part of this contract reads as follows: "We agree to put in for you two wells to furnish station No. 3 at No. 81 Guinett* Street, Brooklyn, E. D., at the uniform price of $10.00 per 1,000 gallons of water furnished per day of 24 hours. You are to give us free access to your premises for our men and tools. It is understood that after test and upon completion of the wells, the price agreed upon is due and payable."

The pleadings were amended at the trial and, as amended, the complaint alleged that the plaintiffs, by an instrument in writing, contracted with the defendant "to put in two wells to furnish its station No. 3, at 81 Gwinnett* street, in the city of Brooklyn, at the uniform price of $10 per thousand gallons of water per day of twenty-four hours," and that they "put in two wells at said station which furnished water at the rate of 800 gallons per minute, and 4,800 gallons per hour, and 1,150,000 per day of 24 hours, and that there is now justly due them the sum of eleven thousand five hundred and twenty dollars therefor," and demanded judgment for that sum and interest.

The amended answer denied these allegations, and set up as an equitable defense that the plaintiffs agreed to construct two wells "at the rate of one dollar per thousand gallons of water per day of twenty-four hours, furnished from said wells, in addition to the water then being derived from the other wells of the defendant;" that the written contract, in stating the price, stated it to be ten dollars instead of one dollar, that this was not the intent of the parties, and that the ten dollars was inserted by the plaintiffs with intent to deceive or defraud the defendant, and asked for a reformation of the contract. The reply denied the allegations of the counterclaim.

The defendant at the Trial Term moved that the equitable issues be tried first, and that thereafter the court proceed with the trial of the common-law issues. The motion was denied. The defendant thereupon moved that the equitable issues be sent to the Special Term, which was also denied. To each denial the defendant excepted.

This court, on a previous appeal from an order denying a motion of the defendant for a trial of the equitable issues at Special

* Sic.

Term, affirmed the order without prejudice to the right of the defendant to renew the same at the trial. The opinion recognized the defendant's claim that the answer constituted a counterclaim, but held that "the matter was equally available to the defendant as a defense to the action in the manner in which it was plead, and if it was established that there was a mistake in the respect claimed, it constituted a good defense to that extent, and the plaintiff's action would be defeated or their damages be measured by the reduced price." (18 App. Div. 411.) This decision renders it unnecessary to consider this question further.

The trial of the issues raised by the amended proceedings resulted in a verdict for $5,750, but a question arising as to the interest, the jury was sent back for further consideration, and returned with a verdict adding the interest. No objection was made by the defendant until after the return of the jury and the rendition of the amended verdict, which was for $6,468.66. After the verdict the defendant excepted. The exception to the rendition of the corrected verdict is untenable, as no objection was made before the jury was sent out for further consideration. From the judgment entered upon this verdict and from an order denying a new trial, the defendant appeals.

The contention of the parties centers upon three questions : *First.* Whether the price agreed upon was ten dollars or one dollar per thousand gallons. *Second.* Does the contract, by its terms, require a continuous test through twenty-four hours ? *Third.* What amount of water the wells furnished.

As to the first question, there was a large amount of evidence on both sides. The witnesses testified to the negotiation which preceded the sending of a written proposal, the meeting of the plaintiffs with Mr. Barstow, the defendant's general superintendent, the discussion of the terms of the proposal, the obliteration of certain words and sentences therein, the reinsertion of some phrases by Mr. Barstow after the subject had been discussed and the final signature of the defendant by " S. W. Barstow, Gen'l Sup't," after, as he testified, he had read it through.

There were two copies of this contract, an original and a carbon copy, of which the defendant had one. That copy was not produced on the trial, but testimony was given by the defendant to

account for its loss. On inspection of the copy produced by the plaintiffs, Mr. Barstow was examined as to the appearance of the figures, ten dollars, and testified that he could not discover anything that looked like an alteration.

The defendant, on the question of the price which was agreed upon, and before any evidence was given by the plaintiffs on the subject of the value or customary price paid for digging wells, furnished testimony as to the usual price for digging wells like those in question. The plaintiffs, on rebuttal, offered evidence as to the customary price, and also as to the fair price in a case where the contractor's emolument was contingent upon successful results. The defendant objected and excepted on the ground that the plaintiffs should have given their testimony upon this subject in the first instance; but this was a matter resting in the discretion of the trial justice.

The court carefully charged the jury upon the question of the price agreed upon, stating the contention of the parties, and fairly and clearly submitted to the jury the question whether it was the actual agreement between the parties that the price was to be one dollar or ten dollars per thousand gallons, and the verdict is not to be disturbed as there does not seem to be any such preponderance of evidence as to justify setting it aside.

As to the second question the contract reads: "At the uniform price of $10.00 per 1,000 gallons of water furnished per day of 24 hours." The plaintiffs contend that the fair construction of this language is that a test need not actually continue during and throughout a period of twenty-four hours, but need only be sufficient to show that there would be a continuing delivery of the required amount during that period; while the defendant contends that it requires the test to be actually continued through a period of twenty-four hours and a flow to be actually shown, which produces the results claimed.

I cannot discover any significance in the use of the word "uniform" in the contract, it being used, apparently, as a qualifying adjective to the word "price." If it had qualified the word "furnished" there would be ground for the defendant's contention. The other words are "furnished per day of 24 hours." I think the use of the words "of 24 hours" was intended to define the length of the day

so as to distinguish it from the ordinary use of the word " day," as applied to the operations of manufacturers. The defendant offered evidence to show that the operation of the company's works was continuous during the entire day and night, and that it required a flow of water at all hours, and this would seem to have afforded a reason why the company should have used words defining the character and method of the test if it had intended to require a special method of testing. The words seem to have been inserted rather for the plaintiffs' benefit in determining the amount of their compensation, as it was not to be limited to the amount of water furnished during the hours of an ordinary day's work, but to the amount furnished during twenty-four hours. For if the wells produced 800 gallons per minute or 48,000 gallons per hour, there would be a very serious difference in the price to be paid if it were to be calculated on the flow for eight or ten hours, instead of on the flow for twenty-four hours.

This contract was not drawn by lawyers. It was a contract between laymen. It falls within the category of mercantile contracts, and such contracts are not to be construed with strictness, but in such a manner as to enable the court to arrive at the real meaning and intention of the parties without hampering it with technical rules of interpretation. (*Raymond* v. *Tyson*, 17 How. 53.)

In *Blossom* v. *Griffin* (13 N. Y. 569) it was held that, in construing a writing, " it is proper to look at all the surrounding circumstances, the pre-existing relation between the parties, and then to see what they mean when they speak." And in *Gray* v. *Green* (9 Hun, 334; affd. without opinion in 102 N. Y. 674) it was held that parties may give to a contract a practical construction by their acts.

Here the question of test was discussed between the parties before the contract was signed, and the conditions and method of the test were not specified. The words " after test " were struck out and again inserted by the defendant's superintendent. After the defendant was notified to attend the test, its representatives did attend, and there is no evidence that any expression of dissatisfaction was made at that time with the mode of the test as it was made. If nothing further was done or said within a reasonable time thereafter, it can hardly be claimed that the parties differed in the deduction proper to be made as to the amount of water which the plain-

tiffs' wells would furnish during twenty-four hours, or that they had not given a practical construction to the method of test to which the contract so briefly related.    Indeed, it may be said that if the defendant had not considered the test a practical and sufficient one, it could have manifested its disapproval of it at the time when it was made, or within a reasonable time thereafter, but the evidence shows that no such suggestion was made until long subsequently.    We think this affords a practical construction of the meaning of the word "test" which the parties had in mind when the contract was signed. If the defendant had had any doubt upon the subject, it could have called for a more stringent test, or if it then had construed the contract as requiring a continuous flow to be shown for a period of twenty-four hours, it could have expressed that idea, and if such a test had been refused, a new and different question might have arisen at the trial.    But its silence in this regard gave consent to the test as sufficient in the way in which it was made.

The third question, as to the amount of water produced, requires a somewhat more extended consideration.    It involves numerous elements.    The contract required the plaintiffs to furnish a certain quantity of water, and the court charged that this meant that the plaintiffs should furnish an additional supply of water, additional to what was already produced by the then existing wells of the defendant, and as this was most favorable to the appellant, no question as to that ruling is raised on this appeal.

The contract provided for the payment of the price "after test, and upon completion of the wells."    The court charged that the question to be determined was, "what did the plaintiffs supply, for which they are entitled to be paid here?" and "that the burden is upon the plaintiffs to satisfy you by a fair preponderance of evidence that each minute during twenty-four hours the plaintiffs' pumps together yielded 800 gallons a minute 'new' water, before you can give them one dollar or ten dollars for each of these thousand gallons per minute per day."

There was no contention on the part of the plaintiffs that there was any continuous test of well No. 1 during a period of twenty-four hours.    There was evidence of various tests for different parts of different days, and of the method, measures and results of such tests, and of the amount of water delivered.    But there was evidence

of a continuous test of well No. 2 running through a period of twenty-four hours. It is true that the defendant had no representative present, but the fact remains that there was evidence that in September a pump was put on the well; that it was run continuously for twenty-four hours, with the exception of the hour occupied in changing the day to the night shift of workmen, and that this continued not only for one day of twenty-four hours but for several days.

Barstow testified that at the time of the signing of the contract there was some conversation about the subject of test, but there does not seem to have been any actual agreement as to the method of the test named in the contract, and there is a clause in it that "all the conditions of this contract are contained above." Under these circumstances, the learned court correctly stated the principle upon which a test should be adjudged, when it said that "test," as used in the contract, meant "a fair, adequate, intelligent and ordinary test," and that the jury "must be satisfied that the goods were delivered; that the quantity of water for which you render a verdict was furnished, or could have been furnished."

The plaintiffs gave evidence of several witnesses as to the method of the tests on several occasions, one of which was made in March, 1895, upon well No. 1, at which, after notification, two of the defendants' representatives, Gilladeau and Wolff, were present; that a centrifugal pump was attached to one of the walls; that a fifty-three-gallon barrel was placed under the stream of water and filled at intervals twenty or twenty-five times, and that the number of seconds which it took to fill the barrel was from six and one-half to ten, equivalent to about 175 or 300 gallons per minute; that this method was also pursued at intervals in the forenoon and afternoon and for several hours; that the time was taken by Gilladeau and Wolff; that this was an ordinary method of testing used by persons in the business; that the well had been yielding for two months prior to the time of the test; that the pumping was stopped at intervals to see whether the amount of water in the well was reduced and that it was not, but that, on the contrary, the supply of water increased by pumping; that a test float was put in one well while pumping the other to see if the pumping of one well

reduced the water in the other, and that it did not except at the starting; that on similar tests of well No. 2, made about a month later and on several occasions, that well yielded 500 gallons per minute, and that this test occurred after they had been pumping water from it for some weeks previously. There was also evidence that, while at first the pumps brought up sand, this condition ceased and the water came up pure. The defendant produced evidence contradicting some of these statements, but it produced no evidence to show that objection was made by its representatives as to the method of the test of the first well as already described. It must, therefore, be considered, as there was evidence given by both parties as to the tests and their sufficiency and results, that the jury was justified in finding that there was a sufficient test, and that there was water furnished to at least one-half of the quantity claimed by the plaintiffs, in accordance with which it rendered a verdict for about one-half the amount for which the plaintiffs demanded judgment.

The defendant, at the close of the plaintiffs' evidence, moved to dismiss the complaint on the ground that the contract contained the following clause: "We promise to give you first-class workmanship and material throughout," and that there was no evidence that this provision was complied with; that no sufficient test was proved, and that it was no proof of the quantity of water furnished during a day of twenty-four hours. The motion was renewed upon the same and upon additional grounds, at the close of all the evidence, and the question must be decided on all the evidence introduced, irrespective of the time when it was given. There was evidence as to the description of the work and of the construction and its methods, and that the wells were constructed in the usual manner, sufficient to justify the submission of the case to the jury. The main contention on this subject seems to have been that the point of the well tube was improperly constructed, but, in respect to this, there was evidence sufficient to justify the jury in finding that the construction used was usual and proper.

The second and third grounds have already been considered and we do not find any error in the refusal to dismiss at the close of the plaintiffs' evidence or at the close of the entire case. It is also to be observed that even on the defendant's theory there was uncon-

tradicted evidence of a certain amount of water for a period less than twenty-four hours continuously, and the plaintiffs were entitled to have submitted to the jury the question as to the actual amount furnished during this time, although it might have been much less than the amount of their original claim; and this is practically conceded in the brief of the learned counsel for the defendant.

The defendant's exception to the exclusion of evidence as to the diminution of water in the defendant's other wells, upon a test made by it in March, 1897, was proper, as the evidence related to a time when the defendant had materially changed the condition by sinking additional wells after the execution of the contract with the plaintiffs. The defendant contends that the burden of proof rested on the plaintiff throughout the whole trial, in accord with the cases of *The Farmers' Loan & Trust Co.* v. *Siefke* (144 N. Y. 354) and *Whitlatch* v. *Fidelity & Casualty Co.* (149 id. 45), and that, therefore, they were bound to establish the fact that the water which they furnished through their wells was new water and not water derived at the expense of the defendant's other wells. The court so charged. The question, therefore, occurs, whether there was evidence sufficient to show that the water was not withdrawn from the defendant's three wells which were in existence at the time of the making of the contract. I exclude from this consideration the evidence as to tests made by the defendant in March, 1897, after its two new wells had been driven, because the condition had been materially changed by the sinking of these new wells. The defendant offered evidence to show that on some occasions while the plaintiffs were pumping their wells the vacuum gauge attached to the defendant's engines showed that the engineer was getting no water and that he was compelled to use water from the city's works with which defendant had connection; that he requested the plaintiffs to stop pumping, and that when they did stop, the city water was turned off. The force of this evidence is impaired, however, by the statement made on cross-examination, that the vacuum gauge, even though the flow of water be constant, will vary from other causes which operate to occasion it.

Assuming that the plaintiffs were required to prove, as the court charged, that the water was not drawn from the other wells, there was evidence tending to show that the pumping on one of the plain-

tiffs' wells did not decrease the water in the other, which was thirty-five feet distant, while all the other of the old wells of the defendant were still further distant. The jury, under this evidence, might properly infer that the plaintiffs had established the fact required by the charge of the court. In view of the slight and shaken evidence of the defendant on this subject, our conclusion finds support in the elementary rule " that where the subject-matter of a negative averment lies *peculiarly within the knowledge* of the other party, the averment is taken as true, unless disproved by that party." (1 Greenl. Ev. [15th ed.] § 79.) For the defendant, being in possession of the premises, had abundant opportunity for observation and test of the exact condition and result upon its wells of pumping the plaintiffs' wells, and yet furnished only the meagre result already alluded to.

The exception also to the refusal to charge as to simultaneous tests of the plaintiffs' two wells was proper, as there was contradictory evidence on the subject, and the court submitted the question to the jury as matter of fact.

The judgment and order should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.