NESBIT v. JENCKS.

(Supreme Court, Appellate Division, First Department. March 20, 1903.)

1. PLEADING—NEW MATTER IN ANSWER—TRAVERSE—REPLY.
Under Code Civ. Proc. § 522, providing that each material allegation of new matter in an answer where no reply is required is to be deemed controverted by the adverse party by traverse or avoidance as the case requires, an allegation in an answer in an action for breach of a contract to pay for certain floor arches alleging a written agreement by which defendant guarantied payment only of a certain portion of the price of setting up such arches, etc., was deemed to be traversed without a reply, and hence plaintiff·was entitled to prove fraud in avoidance of such agreement.

2. GUARANTY—CONSIDERATION—FAILURE—INSTRUCTIONS.
Plaintiff sold to A. & Co. certain fireproof floor arches to be placed in a building on which defendant held a mortgage. Defendant filed a notice of pendency of an action to foreclose, whereupon plaintiff refused to deliver the arches, and claimed that defendant agreed, in consideration of their delivery, to pay therefor. Defendant denied such agreement, and alleged the execution of a written contract by which he agreed to guaranty payment of $1,200 by the purchaser of the fireproofing, if plaintiff would furnish and set the fireproofing in the building. There was evidence that, prior to the contract alleged by either party, all or a large part of the arches had been delivered to the purchaser. Held, that it was error for the court to fail to instruct that, if the arches had been delivered, there was no consideration for the contracts, and plaintiff was therefore not entitled to recover.

3. CONTRACT—FRAUD.
Evidence that in executing a contract plaintiff read the same, and that nothing contained therein was concealed from him, but that he was misled as to its meaning, was insufficient to justify a finding that he had been induced by fraud to execute it.

Appeal from Trial Term, New York County.

Action by John A. Nesbit against Francis M. Jencks. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

The complaint alleges that the plaintiff, on or about September 19, 1900, agreed to sell to the firm of G. A. Adamo & Co. certain fireproof floor arches to be used in the construction of the building then in course of erection on the south side of Ninety-Seventh street 100 feet west of West End avenue; that the price agreed upon was $2,068; that thereafter, and prior to the delivery of the arches, the defendant filed a notice of pendency in an action to foreclose a mortgage on the premises; that plaintiff then refused to deliver the arches, whereupon defendant requested plaintiff to deliver the same, and agreed to pay for them the said purchase price; that plaintiff thereupon delivered the arches, completing the same about October 20, 1900, on the strength of said agreement; and that the arches were used in the construction of the building, to the benefit and advantage of the defendant, but that no part of the purchase price has been paid.

The answer puts in issue the material allegations of the complaint; sets up for a "separate defense" a written agreement between plaintiff and defendant, dated October 12, 1900, wherein the plaintiff agreed, in consideration of defendant's guaranty of payment of $1,200, "to furnish and set" the fireproofing in said buildings, and the defendant, in consideration "of the furnishing of the material and performance of the work" by plaintiff, guarantied ·the payment of $1,200, in certain installments, as the work progressed; and alleged that defendant has paid plaintiff for all the work done under said contract. No reply to the separate defense was served or required by order of the court.

On the trial, the plaintiff and his son gave testimony tending to sustain the allegations of the complaint. They testified, among other things, that, at the time of the agreement on the part of the defendant to pay for the arches, the defendant was informed that the manufacturers of the fireproof arches had requested that they be sent back, and that the same were still on the barge at the foot of Seventy-Ninth street and North River; and that after this conversation the arches were unloaded and delivered, and used in the construction of the buildings. This conversation was claimed to have been had on October 16, 1900, the day after the filing of the lis pendens. On cross-examination, however, the contract alleged in the answer was proved,· and it was admitted that some of the arches had been delivered prior to the 16th, and that on that day the defendant paid the plaintiff $225. the amount of the installments payable when one floor in one of the houses was completed. But it was insisted by plaintiff that said contract was intended to cover "sand, cement, and labor" in setting the arches; that it had nothing to do with furnishing the arches. It appeared that he received further payments on October 20 and 26, and November 2 and 10, 1900, amounting, with the prior payment, to $900, and that the rest of the setting was done under an arrangement with plaintiff by one Axelrod. Plaintiff also testified that the contract set up in the answer was drawn in defendant's office by Mr. Simonson, one of the defendant's assistants; that he called attention to the provisions about furnishing the fireproofing before signing the contract, and Simonson said. "Scratch it out"; that he "asked to have it struck out at the time, but Mr. Simonson said it did not amount to anything"; that he also called Simonson's attention to part calling for completion in 15 days, and that he corrected it by writing in an exception as to "hall landings," etc.

Defendant called as a witness a photographer, who produced a photograph of the buildings, showing some fireproofing piled up in front of them, and testified that the photograph was taken October 15, 1900. Defendant also called Hugh Lamb, who testified, among other things, that he was the supervising architect of the buildings; that he was employed by defendant, and represented him, because he was advancing money on a "building loan" as the work progressed; "I was there for that purpose, watching the interests of Mr. Jencks, and no other. I was not in the interest of Mr. Adamo"; that he was at the buildings, and knew the fireproofing was all delivered (except 200 feet to complete the work, delivered a month or six weeks later) before the 16th of October; that some of it was set, most of it was piled in the building, and some was outside; and that there were between 17,000 and 18,000 feet used on the job. He also testified, in answer to plaintiff's counsel, that the "fair value was from $3,500 to $4,999, if properly done"; and that he estimated the "value of the fireproof arches that were put in those buildings by Mr. Nesbit at about $3,500."

The defendant testified in his own behalf, among other things, that he was a lawyer, president of a safe deposit company and of an investment company; that he had been in the habit of making "building loans," and ·taking a mortgage for the amount to be advanced as the work progressed; that he sold the land in question to Tessie Adamo for $84,000, and took a mortgage for that amount; that he also took another mortgage for the building loan to be advanced for a little over $100,000; that Tessie Adamo was the daughter of Mr. Adamo, who held a power of attorney from her, and also acted as her agent in erecting the buildings. Defendant denied flatly the testimony of plaintiff and his son as to the alleged conversation with him; and testified

that Mr. Simonson was his manager, and drew the contract between him and plaintiff. In answer to a juror, defendant testified: ."I understood that these arches had been delivered to Mr. Adamo at that time in the buildings, and that Mr. Nesbit wanted a guarantee of $1,200 of me to go on, and said that, and I agreed to give it to him, and it was reduced to writing." He also reiterated that he understood that the arches were in the buildings and were Adamo's property, and that he was only asked to guaranty the sum of $1,200 on account of Adamo as an inducement for plaintiff to complete the contract.

Egbert C. Simonson, defendant's manager, testified that there were some things about the contract which made him think that it was not drawn in defendant's office, but would not say positively that it was not. He denied absolutely plaintiff's testimony that his attention was called to the fact that plaintiff was not to furnish the arches under the contract, and that any objection was made to the terms of the instrument in that regard, and that he said it did not make any difference. He testified that he heard no conversation on the 16th of October between plaintiff and defendant respecting a new agreement; that he was there, and would have heard it if it had occurred. In response to a juror he testified that he understood that the arches had been delivered, and that plaintiff was fearful of not getting his money if he went on and completed his contract with Adamo to set them, and asked for a guaranty to the amount of $1,200; and that he regarded it as a safe thing for defendant to do.

In rebuttal, the plaintiff testified that Simonson dictated the contract to a "typewriter" in defendant's office, and after it was drawn presented it to him. He also testified that there were between 10,000 and 11,000 feet of fireproofing delivered after October 15th. This is the substance of the evidence so far as material to the decision of the appeal.

The court, in charging the jury, said to them that the guaranty agreement was binding upon the plaintiff in the absence of fraud or mutual mistake and, if binding, it obligated him to furnish these arches, and there would be no consideration for the alleged agreement of October 16th on the part of the defendant to pay therefor; and further instructed the jury that the plaintiff could not recover unless he established by a preponderance of evidence (1) that the alleged agreement of October 16th was made, and (2) that he was induced to sign the guaranty contract of October 12th by fraud. Counsel for both parties evidently understood the court to instruct the jury that the plaintiff could not recover unless his signature to the guaranty contract was obtained by fraud or mutual mistake, for each took an exception to that effect, and no further explanation on the question was made by the court upon such exceptions being taken. Before the delivery of the charge, counsel for the defendant presented to the court certain requests in writing to charge, and, among other things, that, if the tile arches or a substantial portion thereof were furnished and delivered before the alleged agreement of October 16th, the plaintiff could not recover. The court gave no instruction to the jury on this subject, and at the close of the charge counsel for the defendant excepted to the refusal of the court "to charge each of the requests which I have made, separately." The jury rendered a verdict in favor of the plaintiff for the full amount of his claim, with interest.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, INGRAHAM, and LAUGHLIN, JJ.

James L. Bishop, for appellant.

Max Altmayer, for respondent.

LAUGHLIN, J. The judgment must stand or fall upon the theory on which the issues were tried and submitted to the jury. Although no reply was served, the allegations of the answer are deemed traversed or avoided, and the plaintiff was entitled to prove fraud in avoidance of the guaranty agreement. Code Civ. Proc. § 522; Jackson v. Brown, 76 Hun, 41, 27 N. Y. Supp. 583; Sullivan

v. Traders' Ins. Co., 169 N. Y. 213, 62 N. E. 146; Bennett v. Ed.
Elec. Co., 26 App. Div. 363, 49 N. Y. Supp. 833; Id., 164 N. Y.
131, 58 N. E. 7. Whether the agreement of October 16th was made,
depended upon conflicting evidence which presented a fair question
for the consideration of the jury. But, assuming that it was made,
clearly there was no consideration if the tile arches had been pre-
viously delivered on the premises; and, as there was substantial evi-
dence to the effect that all except about 200 feet had been previously
delivered, the jury should have been instructed as to the effect of
this evidence. In the absence of such instructions, it is not at all
clear that the evidence has been properly considered; and, for aught
that appears, the jury may have supposed that the plaintiff was en-
titled to recover if the guaranty agreement was binding and the agree-
ment of October 16th was made, even though the arches had then
been delivered. Technically, perhaps, the defendant's exception was
not well taken, for the request presented required an instruction that,
if the whole or a substantial part of the arches had been delivered
prior to the agreement of October 16th, the defendant was entitled
to a verdict. This, of course, would not follow. The plaintiff, as-
suming that the guaranty agreement was valid, and that on October
16th the defendant agreed to pay for the arches, would still be en-
titled to recover for such of the arches as were delivered on the faith
of that agreement. Moreover, failure to instruct the jury on this
point was doubtless owing to an inadvertence on the part of the
court, and the exception to the refusal to charge the several requests
presented was quite general, and, perhaps, did not fairly draw the
attention of the court to the omission. Benedict v. Deshel, 77 App.
Div. 276, 79 N. Y. Supp. 205; Connor v. Metropolitan St. Ry. Co.,
77 App. Div. 384, 79 N. Y. Supp. 294. Assuming, however, that the
jury understood that the court intended to instruct them that they
could not relieve the plaintiff from the guaranty contract on the
ground that it was executed by mutual mistake, and that for the pur-
pose of this action it was valid unless his signature was obtained by
fraud, yet we think the evidence is wholly insufficient to sustain the
verdict on the ground of fraud in inducing the execution of the
guaranty agreement by the plaintiff. He appears to have been an
experienced, intelligent business man, fairly familiar with the Eng-
lish language, and with the meaning of particular words. He saw at
once, on the guaranty agreement being presented to him for signa-
ture, that it appeared to embrace these tile arches, and he does not
say that he understood the clause was stricken out before he signed,
but apparently, according to his testimony, he signed relying on the
representation of Simonson that it was not intended to include them.
This is not sufficient evidence of fraud to vitiate the contract. He
was aware of the contents of the contract, and nothing therein con-
tained was concealed from him. He merely claims to have been mis-
led as to its meaning, and against his own judgment as to its proper
interpretation. At most, that was a mere representation as to its
legal effect, and may have been honestly made. Simonson, as ap-
pears in the statement of facts, denied that there was any conversa-
tion on this point after the preparation of the contract. In such

case, the contract, which was executed by the plaintiff with full knowledge of its contents, should itself be deemed an important witness, and should not be lightly overcome by testimony of this character.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.